JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, the City of Cleveland ("City"), Cuyahoga County Department of Development, Cuyahoga County Engineer, and the Cuyahoga County Board of County Commissioners ("County") (collectively referred to as "appellants"), *Page 5 
appeal the trial court's denial of their individual motions for summary judgment seeking dismissal of plaintiffs-appellees' claims pursuant to the immunity under R.C. Chapter 2744. An order that denies a political subdivision immunity under R.C. Chapter 2744 is a final, appealable order. R.C. 2744.02(C); Hubbell v. Xenia, 115 Ohio St.3d 77,2007-Ohio-4839, syllabus. Accordingly, appellants have properly limited their arguments on appeal to this topic.[1]
 {¶ 2} This appeal stems from property damage that resulted from a City water main break and an ensuing gas explosion on the site of a construction project commissioned by the County with defendant DiGioia-Suburban Excavating, LLC ("DiGioia"). The project involved improvements, including road and sewer replacements, on Lee Road in Maple Heights, Ohio.
 {¶ 3} The City assigned Pernell Perry, a City employee, to the project site in order to protect the City's interests in its water supply equipment and utilities that are located there.
 {¶ 4} On March 11, 2002, DiGioia was working around City water mains. A DiGioia employee was in a hole removing dirt around a valve box when water suddenly shot into a 50-foot stream in the air. Perry, still on the scene, saw the water burst and went over to inquire as to what they "hit." According to Perry, no *Page 6 
one knew what caused the water leak. Perry ascertained that it was either a 12" main or a 24" main. The 12" water main could be shut down by Perry and the laborers at the scene. However, shutdown of the 24" main would require a hydraulic crew.
 {¶ 5} Perry called his supervisor, who instructed him to shut down the 12" main and then call him back. Perry proceeded to shut down the 12" main with the assistance of DiGioia employees. This took over two hours.
 {¶ 6} DiGioia employees claim they told Perry from the beginning that the water was coming from the 24" main. Perry denies this and claims they did not mention the 24" main until he had already discovered that it was the source of the leak.
 {¶ 7} Meanwhile, DiGioia employees decided to place metal plates over the water stream, in order to protect nearby electrical lines. This, however, caused the water to divert and erode the soil, which was supporting a gas line. The gas line then broke, which ultimately lead to a massive fire that burned for about one-half hour until the gas company turned off the gas. The fire caused extensive damage to area properties. The water leak was eventually shut off by a City hydraulic crew but not until many hours later. *Page 7 
 {¶ 8} An expert witness employed by appellee Walgreen Company ("Walgreens") has opined that "the incident would not have occurred if the transmission water valve had been turned off in a timely manner." The expert additionally opined that Perry wasted about two and a half hours turning off the 12" valves that were not applicable to the incident. The expert concluded Perry's delay in shutting down the 24" main was unreasonable and lead to the erosion of the soil under the 20" gas line.
 {¶ 9} Because the City and the County advance the same assignment of error, namely that the trial court erred by denying them immunity against the plaintiffs' claims, we address them together to the extent of setting forth the substantive law. Thereafter, we shall apply the law and facts to the plaintiffs' claims against them individually.
 {¶ 10} "City's Assignment of Error I. The trial court erred in not granting summary judgment in favor of the City of Cleveland on all claims against it on the basis of the sovereign immunity provided to the City as a political subdivision by Chapter 2744 of the Ohio Revised Code.
 {¶ 11} "County's Assignment of Error I. The trial court erred by not granting summary judgment to the Cuyahoga County defendants/appellants on all claims against them on the basis of their immunity from liability for `government functions' such as road construction projects that is established in R.C. 2744.02(A)." *Page 8 
 {¶ 12} "A court of appeals must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ.R. 56(C) motion for summary judgment in which a political subdivision or its employee seeks immunity." Hubbell, 2007-Ohio-4839, ¶ 21.
 {¶ 13} In general, immunity is an affirmative defense, which must be raised and proven, i.e., it usually does not affect the jurisdiction of the court. State ex rel. Koren v. Grogan (1994), 68 Ohio St.3d 590, 594, citing Goad v. Cuyahoga Cty. Bd. of Commrs. (1992), 79 Ohio App.3d 521,523-524.
 {¶ 14} The three-tier analysis that governs the application of sovereign immunity to a political subdivision pursuant to Chapter 2744 of the Ohio Revised Code, is set forth in Cramer v. Auglaize Acres,113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 14-16, quoting Colbert v.Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7-9:
 {¶ 15} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B) * * *. *Page 9 
 {¶ 16} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
 {¶ 17} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." (Internal citations omitted).
 {¶ 18} For purposes of immunity under R.C. Chapter 2744, "governmental function" is defined by R.C. 2744.01(C) and "proprietary function" is defined by R.C. 2744.01(G).
 {¶ 19} Here, the parties agree that the City's involvement in this case constituted establishing, maintaining, and operating a water supply, which is a proprietary function under R.C. 2744.01(G)(2)(c). The parties also agree that the County's involvement in this case constituted the maintenance or repair of a road or street and the planning or design, construction or reconstruction of a public improvement to a sewer system, which are both designated as governmental functions pursuant to R.C. 2744.01(C)(2)(e) and (l). *Page 10 
 {¶ 20} There is no dispute that the first tier of the immunity analysis is satisfied by both the City and the County. We proceed then to examine separately whether the City or County are entitled to immunity in this case.
A. Sovereign Immunity as to the County
 {¶ 21} Except as specifically provided in R.C. 2744.02(B)(1), (3), (4), and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. Wilson v. Stark Cty. Dept ofHuman Serv. (1994), 70 Ohio St.3d 450.
 {¶ 22} The County asserts immunity for performing governmental functions pursuant to R.C. 2744.02. Walgreens is the only party-appellee to contend otherwise in this appeal. Walgreens maintains that the exception to immunity in R.C. 2744.02(B)(3) applies, which provides:
 {¶ 23} "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge." *Page 11 
 {¶ 24} In analyzing the above statute, the Ohio Supreme Court has explained that the focus is upon whether the political subdivision has failed in its duty to "keep highways and streets open for the purposes for which they were designed and built — to afford the public a safe means of travel." Manufacturer's Nat'l Bank v. Erie Cty. Road Comm.
(1992), 63 Ohio St.3d 318, 321. Stated differently, did "a condition exist within the political subdivision's control that creat[ed] a danger for ordinary traffic on the regularly traveled portion of the road[?]" Id.
 {¶ 25} In this case, the roadway was under construction and was not open for travel. Walgreens, a fixed building structure, sustained property damage from a gas explosion that occurred during the construction project. Walgreens was not damaged in the course of traversing an allegedly unsafe roadway.
 {¶ 26} The trial court should have granted the County's motion for summary judgment on the grounds of state sovereign immunity contained in R.C. Chapter 2744. The County's assignment of error is sustained.
B. Sovereign Immunity as to the City
 {¶ 27} As set forth above, the City was engaged in a proprietary function for purposes of the immunity analysis. Where a proprietary function is involved, the second tier of the immunity analysis focuses on whether any exception to immunity would apply under the provisions of R.C. 2744.02(B). In this instance, the City concedes that the exception to R.C. 2744.02(B)(2) would apply. *Page 12 
 {¶ 28} R.C. 2744.02(B)(2) establishes liability of political subdivisions for injuries caused by negligent acts performed by employees with respect to proprietary functions.
 {¶ 29} The City, however, contends that its immunity status should be reinstated pursuant to R.C. 2744.03(A)(5), which provides:
 {¶ 30} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 31} "* * *
 {¶ 32} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." *Page 13 
 {¶ 33} The City relies on Elston v. Howland Local Schools,113 Ohio St.3d 314, 2007-Ohio-2070, which held:
 {¶ 34} "Pursuant to R.C. 2744.03(A)(5), a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining how to use equipment or facilities unless that judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, because a political subdivision can act only through its employees." Id. at syllabus.
 {¶ 35} The City maintains that Perry's actions on March 11, 2002 qualified as an exercise of discretion over the use of equipment, supplies, and materials, thereby entitling it to immunity under R.C.2744.03(A)(5).
 {¶ 36} In response to this argument, the various appellees respond that questions of material fact exist over whether Perry's actions or judgment was exercised in a wanton or reckless manner. This same response was contained in briefs in opposition to the City's motion for summary judgment below. See, e.g., R. 165, p. 14 ("this Court must still deny the City's motion as a genuine issue of material fact exists as to whether the City exercised its judgment or discretion with malicious purpose, and bad faith, or in a wanton or reckless manner.")
 {¶ 37} The appellees point to evidence in the record which, if believed, would establish that numerous individuals repeatedly told Perry that the leak was coming from the 24" water main and not the 12"' water main. They also claim Perry was told he was misreading his maps. Nonetheless, Perry focused his efforts on shutting *Page 14 
down the 12" main for several hours. Perry, by his own admission, made no effort to shut down the 24" water main until after the 12" main was ruled out as the source. This, the appellees contend is sufficient evidence to overcome the City's effort to reinstate immunity under R.C.2744.03(A)(5) at the summary judgment stage. The trial court obviously agreed, since it denied the City's motion that raised this same argument.
 {¶ 38} The City contends that the appellees' pleadings only alleged a claim of negligence, thus barring any evidence on the issue of discretion being exercised by the City or its employees in a wanton or reckless manner. The City asserted this argument in its reply brief in support of its motion for summary judgment. All of the complaints in this consolidated appeal alleged negligence claims against the City but did not allege that the City acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." Although Ohio Bell Telephone Company, Walgreens, and Dominion East Ohio did allege that the City acted in a "careless" manner, this is not the equivalent of malicious purpose, bad faith, wantonness, or recklessness. In answering each of the appellees' complaints, the City asserted the defense of governmental immunity. Nonetheless, when the appellees subsequently filed amended complaints, they still did not add any allegations that the City acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 39} The Ohio Supreme Court has held that where a party's complaint against a political subdivision does not allege malice, bad faith, or wanton or *Page 15 
reckless conduct, a court errs by denying immunity pursuant to R.C.2744.03(A)(5) where the alleged injury, death, or loss to person or property resulted from the political subdivision's exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources. Elston v. Howland Local Schools, supra at ¶ 31; accordKnotts v. McElroy, Cuyahoga No. 82682, 2003-Ohio-5937 (upholding dismissal of plaintiff's complaint on basis of qualified immunity where plaintiff had not alleged acts against the governmental entity beyond that of mere negligence).
 {¶ 40} The only basis that the trial court had to deny immunity to the City in this case was the factual dispute as to whether the City, through its employees, exercised their judgment or discretion in their efforts to stop the water leak in a wanton or reckless manner. Although courts have not required a party to supplement their pleadings where an issue has been tried by the implicit or express consent of the other party, that is not the case here. See, e.g., Zaychek v. NationwideMutual Ins. Co., Ninth App. No. 23441, 2007-Ohio-3297. The City did object to the trial court's consideration of any alleged recklessness or wantonness on its part through its reply brief in support of its motion for summary judgment. Therein, the City maintained that the appellees' complaints failed to contain allegations sufficient to overcome the application of governmental immunity; specifically, the City asserted that none of the appellees had alleged that the City acted maliciously, in bad faith, recklessly, or wantonly. Although the appellees could *Page 16 
have moved to amend their complaints or moved under Civ.R. 15(B) to have the pleadings conform to the evidence, they did not do so. Accordingly, based on the above precedent, the trial court erred by denying the City the protections of qualified immunity under R.C. Chapter 2744.
 {¶ 41} Applying the controlling law to this record, the City was entitled to an application of governmental immunity on appellees' claims of negligence against it.
 {¶ 42} Appellants' assignments of error are sustained because both the City and the County were entitled to governmental immunity pursuant to R.C. Chapter 2744. The trial court's judgments that denied summary judgment as to the application of governmental immunity to these appellants are reversed and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 43} "County's Assignment of Error II. The trial court erred by not granting summary judgment to the Cuyahoga County defendants/appellants on all claims against them because Cuyahoga County cannot be vicariously liable for the allegedly negligent act of the independent contractor, defendant Digioia-Suburban Excavating Co., LLC."
 {¶ 44} Given our disposition of the City's and County's first assignments of error, we do not find it necessary to address the County's Assignment of Error II, which is moot. App.R. 12(A)(1)(c).
Judgment reversed and case remanded.
It is ordered that appellants recover from appellees their costs herein taxed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] The denial of a motion for summary judgment is ordinarily not a final, appealable order and, therefore, any issues or arguments beyond that of political subdivision immunity, which appellants' may have raised in their respective motions for summary judgment that the trial court denied, are not ripe for appeal at this time. *Page 1