OPINION
 I. Facts/Procedural Posture {¶ 1} Plaintiff-appellants, Marilyn Monteith, Linda Elkins, Grady Adkins, Tamara Adkins, Christina Adkins, Stephanie Adkins, and Grace Hysell, Executrix, (collectively "appellants"), appeal the Crawford County Court of Common Pleas grant of summary judgment in favor of defendant-appellee, City of Crestline (hereinafter "Crestline"). For reasons that follow, we affirm.
 {¶ 2} The 2002 Crestline Harvest Festival began on September 20, 2002. As part of the opening day festivities, Crestline scheduled an outdoor concert. Crestline contracted with co-defendant Spectra Productions, Inc. ("Spectra") to promote the concert. Spectra is owned by Al and Connie Pichot. Spectra, in turn, *Page 3 
contracted with co-defendant Delta Productions, Inc. ("Delta") to set-up the stage, lighting, and sound system for the concert. Crestline employees assisted Delta in the concert set-up by driving rebar stakes into the ground as stabilizers for the light towers and trusses. Later that day, as appellants were waiting for the concert a severe storm system moved into Crestline. As a result of the storm, the outdoor lighting system collapsed seriously injuring appellants and others.
 {¶ 3} Two separate tort cases were thereafter filed. On September 20, 2004, appellants Monteith and Elkins filed a complaint against defendants Delta, Spectra, Crestline, and others in the Richland County Court of Common Pleas. This case was assigned number 04CV959D. On October 20, 2004, Delta moved for a change of venue to Crawford County, which the trial court granted. The case was then assigned Crawford County case no. 05CV0034.
 {¶ 4} On October 15, 2002 appellants Grady Adkins, Tamera Adkins, Christine Adkins, Stephanie Adkins filed a complaint against defendants Delta, Spectra, and others in the Cuyahoga County Court of Common Pleas. This complaint was subsequently amended on January 9, 2004 to add defendant Crestline. On November 1, 2004, the action was dismissed without prejudice.
 {¶ 5} On December 7, 2004, appellants Adkins et al. refiled their suit. This case was assigned Cuyahoga County case no. CV-04-549231. On January *Page 4 
24, 2005, Delta moved for a change of venue to Crawford County, which the trial court granted. The case was then assigned Crawford County case no. 05CV0098.
 {¶ 6} On July 7, 2006, appellants Monteith and Elkins moved to consolidate their case, case no. 05CV0034, with the Adkins' case, case no. 05CV0098. On July 31, 2006, the trial court granted the motion and consolidated both cases under Crawford County case no. 05CV0034.
 {¶ 7} Subsequently, Crestline filed two motions for summary judgment, which were denied on August 6, 2006 and May 9, 2007. On September 17, 2007, Crestline filed a motion asking the trial court to reconsider its summary judgment motion on the basis of Elston v. Howland LocalSchools, 130 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845. On October 18, 2007, the trial court granted Crestline's motion for summary judgment.[1]
 {¶ 8} On November 16, 2007, Monteith and Elkins filed their appeal from this judgment, which was assigned appellate case no. 3-07-35. On that same day, Adkins et al. and Executrix Hysell filed their appeal from this judgment, which was assigned appellate case no. 3-07-36. On January 25, 2008, this Court ordered the two cases be consolidated for appeal.
 {¶ 9} Appellants appeal asserting one assignment of error each for review. Appellants Adkins et al. have since settled their claims against defendants Spectra and Delta. *Page 5 
 II. Standard of Review {¶ 10} We review a decision to grant summary judgment de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citingGrafton v. Ohio Edison (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C);Grafton, 77 Ohio St.3d at 105, citing State ex rel. Cassels v. DaytonCity School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 219,631 N.E.2d 150.
 {¶ 11} Material facts are those facts "that might affect the outcome of the suit under the governing law." Turner v. Turner (1993),67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present `a sufficient disagreement to require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'" Id., citing Liberty Lobby, Inc., 477 U.S. at 251-52.
 {¶ 12} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. Perez v. Scripts-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. "The purpose of summary *Page 6 
judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." Lakota Loc. Schools Dist. Bd. ofEdn. v. Brickner (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.
 III. Analysis APPELLANTS MONTEITH ELKINS' ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT DEFENDANT-APPELLEE, CITY OF CRESTLINE, WAS IMMUNE FROM LIABILITY PURSUANT TO R.C. 2744.03(A)(5), WHERE THE CITY OF CRESTLINE WAS INVOLVED IN A "PROPRIETARY FUNCTION" UNDER TIER TWO OF THE IMMUNITY ANALYSIS AND WHERE NONE OF THE R.C. 2744.03(A) DEFENSES ARE APPLICABLE TO REINSTATE IMMUNITY.
 APPELLANTS ADKINS' ET AL. ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE CITY OF CRESTLINE ON THE BASIS OF IMMUNITY PURSUANT TO R.C. 2744.03(A)(5).
 {¶ 13} In their sole assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of Crestline on the basis of R.C. 2744.03(A)(5). Specifically, they argue that operating a festival is a proprietary function in which Crestline is liable for the negligent performance of acts by its employees under R.C.2744.02(B)(2), and Crestline's immunity is not reinstated *Page 7 
pursuant to R.C. 2744.03(A)(5) since Crestline's employees did not exercise independent judgment or discretion.
 {¶ 14} Crestline, on the other hand, argues that it is not liable for appellants' injuries because its employees were not negligent; but rather, it was the independent contractor (Delta) who decided which anchoring system would be used for the stage lights who was negligent. Therefore, Crestline argues that it is not liable under R.C.2744.02(B)(2). Furthermore, to the extent it would be liable, Crestline argues that their immunity is revived pursuant to R.C. 2744.03(A)(5) because Crestline exercised its discretion and independent judgment with respect to hiring Spectra, which in turn hired Delta to set up the stage lighting.
 {¶ 15} R.C. 2744 governs political subdivision immunity. To determine whether a political subdivision is entitled to immunity under R.C. 2744, a reviewing court must engage in a three-tiered analysis. Hubbard v.Canton Cty. Schl. Brd. Of Ed., 97 Ohio St.3d 451, 2002-Ohio-6718,780 N.E.2d 543, ¶ 10, citing Cater v. Cleveland (1998), 83 Ohio St.3d 24,28, 697 N.E.2d 610. First, the court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. R.C. 2744.02(A)(1); Hubbard, 2002-Ohio-6718, at ¶¶ 10-11. The general rule is that political subdivisions are not liable in damages. Id. If the entity is a political subdivision entitled to immunity, then the *Page 8 
court must determine whether any of the R.C. 2744.02(B) exceptions to immunity apply. Hubbard, 2002-Ohio-6718, at ¶ 12, citing Cater,83 Ohio St.3d at 28. If any of the R.C. 2744.02(B) exceptions apply, then the political subdivision can reinstate its immunity by showing that a R.C.2744.03 defense applies. Cater, 83 Ohio St.3d at 28.
 {¶ 16} Appellants alleged two independent grounds for their negligence claims. First, appellants alleged that Crestline was negligent in its erection of the lighting system, which ultimately collapsed causing their injuries. Second, appellants alleged that Crestline was negligent for failing to warn them of the approaching storm system. We will analyze these two grounds separately. A. Stage Lighting Set-up
 {¶ 17} It is undisputed that Crestline is a political subdivision to which liability generally applies under R.C. 2744.02(A)(1). The parties disagree, however, as to whether any of the R.C. 2744.02(B) exceptions to immunity apply. Appellants argue that R.C. 2744.02(B)(2)'s exception applies. Crestline disagrees and argues that this exception does not apply because appellant failed to show that its employees negligently performed any act giving rise to their injuries. Crestline further argues that, even if the exception applies, it is still immune pursuant to R.C. 2744.03(A)(5). We agree with Crestline.
 {¶ 18} R.C. 2744.02(B)(2) provides: *Page 9 
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 * * *
 (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
R.C. 2744.01(B) provides, in pertinent part: `"Employee' does not include an independent contractor * * *."
 {¶ 19} Appellants argue that Crestline employees negligently erected the stage lighting because the supporting structure's design was inadequate. The record, however, indicates that Crestline employees were not responsible for deciding what type of supporting structure would be used — that decision was made by Delta. The record also lacks any evidence that Crestline employees failed to properly follow Delta's instructions when helping to erect the stage lighting.
 {¶ 20} Craig Hoerig, Delta's owner, testified that Spectra hired him to "[p]rovide a sound system for the entertainment, to provide the light system, stage lighting system * * *." (Hoerig Depo. at 13). Regarding the role of Crestline employees, Hoerig testified that they were "stage loaders" or "basically — I mean *Page 10 
muscle, they helped us unload the truck, helped us set the equipment up. They participate[d] in all parts of the setup * * *. (Hoerig Depo. at 24-25). When asked whether Delta was controlling the manner and method of the Crestline employees' work, Hoerig testified: "Yes. * * * there was not necessarily any freelance type of things going on. * * * You would ask them to do this and they would go do that." (Id. at 25-26). Hoerig also testified that he believed that the people working with him correctly installed the lighting system. (Id. at 79).
 {¶ 21} Steve Heiby, a Crestline employee that helped Delta erect the lighting system for the festival, testified that either Michael Todd or Mr. Hoerig of Delta assisted in setting up the light system, and he did "[j]ust whatever they asked us, really." (Heiby Depo. at 11, 13). Specifically, Heiby testified that he and co-worker Jeff Hatfield drove rebar into the ground to support one side of the lighting system. (Id. at 12-13). Heiby indicated that the rebar was supplied by Delta, but that he may have used a city sledge hammer. (Id. at 14-15). Heiby testified: "* * * One of the two, you know, basically told us where to put [the rebar]. You know, what to do." (Id.). Heiby also testified that he did not tie the lighting structure to the rebar. (Id. at 14). When asked specifically whether he followed Delta's instructions in assembling and erecting the lighting, Heiby said "yes." (Id. at 26).
 {¶ 22} Michael Todd, Delta's production manager and the person responsible for setting up the lighting system at the Crestline festival, testified that *Page 11 
he was there "working on the [lighting system] itself, and [he] just delegated one of the hands to take a sledge hammer and drive [the rebar] * * *." (Todd Depo. at 5, 19, 48). When asked if he failed to properly install the lighting system, Todd testified: "No, absolutely not. I've gone through this in my mind for the last year." (Id. at 42-43).
 {¶ 23} Mayor Dzugan also stated that Crestline employees were working under Delta's direction:
 At the request of Spectra Productions and/or Delta Productions, several city employees assisted with the stage and stage lighting setup. At all times their work was directed and supervised by Spectra Productions and/or Delta Productions. The City of Crestline was not responsible for the erection, maintenance, securing and/or inspection of the stage and stage lighting for the 2002 Harvest Festival. At all times Spectra Productions, Inc. and Delta Productions, Inc. were independent contractors and not employees of the City of Crestline.
(Dzugan Aff. at ¶ 6).
 {¶ 24} Finally, appellants' expert, James Aman, could not identify any negligent act committed by Crestline employees while setting up the stage lighting. Rather, Aman criticized Delta's choice of lighting support system and Crestline for not being involved in that decision. Aman testified:
 Q: Now it's your opinion that the anchoring of the lighting system by the use of span set tied to metal rebar driven into the ground was insufficient?
 A: Insufficient and unsafe. *Page 12 
 Q: Do you know who or what entity made the decision that this lighting system would be anchored by use of span set nylon ropes tied to metal rebar pounded into the ground?
 A: Delta.
 Q: That would be Delta Productions?
 A: Delta Productions. They actually used a come-along steel cable span to set the rebar.
 Q: And you criticized that decision?
 A: Absolutely, especially considering they were anchoring a ground support system that was not designed for outdoor application. It's only engineered and certified for indoors.
 Q: Now you're aware that there were local nonunion laborers used to drive the metal rebar into the ground and secure the nylon ropes, the span set from the lighting system to the rebar; is that correct?
 A: Yes, I'm aware of that.
 Q: In the material you reviewed, did you find anything to indicate that the actual manner in which the rebar was driven into the ground or the span set was secured to the rebar was done in an improper manner.
 A: Yes, it was done improperly.
 Q: As opposed to the decision to use that, I mean, did you find anything that said the manner in which it was done was done improperly?
 A: Right. The technique they used to secure the span set of the rebar was unsafe and substandard of industry standards.
 Q: When you refer to "the technique," what do you mean?
 A: They wrapped the nylon cord span set around a piece of metal rebar, which we all know what rebar looks like, it's got scales on it. You have metal digging into nylon. Not good. Not safe. Not a standard that you would do — that you would utilize if you were doing it safely anywhere in the industry.
 Q: Let me understand, though. What you're criticizing is the fact that it was decided to tie metal — excuse me, tie nylon ropes to metal rebar?
 A: I'm critical of that as well, yes, in addition to the whole idea of anchoring it from the first place, from the get-go.
 Q: But I want to be clear. What you are criticizing are the *Page 13 decisions that were made to use this type of anchoring system?
 A: Yes, that's what I'm criticizing.
 Q: But did you find anything in the materials that indicated that say, the rebar was supposed to be driven in "X" amount of feet and wasn't driven in that far? Did you find anything like that?
 A: No, I did not. Q: Or did you find anything in the material that the nylon cables were supposed to be tied to the rebar in one particular fashion and they weren't tied in that fashion? Did you find anything along those lines?
 A: Let me regress one more time. The use of this application from the get-go was wrong. It was not safe. It shouldn't have been secured in this manner, period.
 Q: I understand that. You're saying that the decision should have not have been made to use this type of anchoring system?
 A: That is what I am saying.
 Q: But did you find anything improper about the actual physical labor that was done to secure the anchoring system?
 A: I can't answer that. I mean, I thought I made it clear that it shouldn't have been done from the get-go. This is not the way that you do this kind of stuff.
 * * *
 Q: * * * is there anything else that you are criticizing about the Crestline employees' actions other than the actions of the employees who actually drove in the rebar and tied the nylon cable to the rebar from the lighting tower? A: If you're just talking about these four individuals that were engaged to knock the rebar in — — is that what you are talking about? Q: Yes. A: No.
 * * *
 Q: * * * Do you have criticism of the City of Crestline's actions in any other respect, with respect to the decision to use this particular ground support lighting system and this method of anchoring?
 A: Yes, I do have — — I am critical of them not being involved in that decision. They should have been. *Page 14 
 Q: Other than saying that Crestline should have been involved in the decision as to what type of ground support lighting system would be used and what type of anchoring would be used, do you have any other criticism of Crestline's actions with respect to the use of this particular ground support lighting system? A: No.
(Aman Depo. at 67-75).
 {¶ 25} Based upon our review of the evidence, it is clear that the appellants have failed to show any negligent act on the part of Crestline employees in the lighting system set-up. The undisputed evidence is that Crestline employees were general laborers following the instructions and orders of Delta. Since Crestline employees did not act negligently, Crestline cannot be held liable under R.C. 2744.02(B)(2). Furthermore, Crestline cannot be held responsible for the negligent acts of Delta under R.C. 2744.02(B)(2) because Delta was an independent contractor, and the term "employee" in section 2744.02(B)(2) does not include independent contractors. R.C. 2744.01(B).
 {¶ 26} The only potential negligence alleged by appellants' expert with regard to the lighting support system was Crestline's failure to be involved in, and presumably veto, Delta's decision to use the ground support system. (Aman Depo. at 75). Appellants' argument that Crestline is liable under R.C. 2744.02(B)(2) for this reason is meritless for several reasons. *Page 15 
 {¶ 27} First, it attempts to hold Crestline liable for the negligent acts of Spectra's independent contractor Delta, which is contrary to the plain language of R.C. 2744.02(B)(2) as explained supra.
 {¶ 28} Second, Crestline's decision to hire Spectra for a festival concert, which in turn retained Delta, was an exercise of judgment and discretion in determining how to use its equipment, personnel, and other resources. The City of Crestline decided to use city funds to hire Spectra as a promoter for a festival concert and to use its employees and equipment to assist Delta in setting up the stage and lighting system. (Dzugan Aff. at ¶¶ 3-4, 6). Therefore, Crestline is immune from liability unless those decisions were exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C. 2744.03(A)(5). Since appellants have only alleged negligence, Crestline is entitled to summary judgment pursuant to R.C. 2744.03(A)(5). Elston, 2007-Ohio-2070, at ¶ 31; Burya v. Lake Metro Parks Bd. of Park Commrs.,114 Ohio St.3d 35, 2007-Ohio-2712, 867 N.E.2d 829; Ohio Bell Tel. Co. v.Digioia-Suburban Excavating, L.L.C., 8th Dist. Nos. 89708, 89907,2008-Ohio-1409, ¶ 39.
 {¶ 29} Third, it makes absolutely no practical sense that Crestline, through its officials or employees, would make decisions about what lighting support structure would or would not be appropriate. On the other hand, it makes perfectly good sense that Crestline would hire an independent promoter (Spectra) who *Page 16 
would be in charge of retaining a productions company (Delta) with industry expertise. The whole point of hiring Spectra and Delta from Crestline's perspective was to rely upon the expertise of industry professionals. (Dzugan Aff at ¶ 5).
 {¶ 30} In conclusion, Appellants failed to show that Crestline employees were negligent in the erection of the stage light support system; and therefore, Crestline is not liable under R.C. 2744.02(B)(2). Furthermore, Crestline's exercise of discretion with respect to its decisions to: hire Spectra (which in turn hired Delta); allocate employees to help Delta with the stage and lighting set-up; and allocate resources for the payment of these services are covered by R.C.2744.03(A)(5)'s defense. For all these reasons, we find that Crestline was entitled to summary judgment with respect to the stage light set-up because it was immune.
B. Failure to Warn Concert Attendees of Inclement Weather
 {¶ 31} As a separate ground to support their claims of negligence, appellants argue that Crestline "failed to monitor the weather and take or recommend appropriate action to prevent injury, harm and damage to the persons who were attending the City's own Harvest Festival." (Appellants Adkins et al. Brief at 11); (Appellants Monteith et al. Brief at 8). Appellants, again, point to *Page 17 
R.C. 2744.02(B)(2) as the applicable exception to the general immunity afforded to Crestline.
 {¶ 32} Crestline, on the other hand, argues that the county is responsible for issuing severe weather warnings not the city. Furthermore, Crestline submits that even if it was required to issue a warning, this would be a governmental function under R.C.2744.01(C)(2)(a) and (b); and therefore, it would be immune under R.C.2744.02(A)(1).
 {¶ 33} Appellants' arguments lack merit. Even assuming that R.C.2744.02(B)(2)'s exception applies and that Crestline had a duty to warn of inclement weather as appellants argue, liability under R.C. 2477.02(B)(2) is triggered only when there is negligence. Sparks v. ErieCounty Bd. of Commr's (Jan. 16, 1998), 6th Dist. No. E-97-007, at * 7. Negligence requires, in addition to a duty and a proximately derived injury, a breach of a duty. Id., citing Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, 539 N.E.2d 614; Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. It is clear from the record that the city, through its fire department, issued a warning of impending inclement weather to those attending the concert. (Todd Depo. at 35); (Hoerig Depo. at 129). The fire department official also indicated to the concert patrons *Page 18 
that the fire station was open for shelter. (Hoerig Depo. at 129).[2]
In addition, the concert attendees were told that the lobby of the jail was open for shelter. (Todd Depo. at 35). Accordingly, even if Crestline had a duty to warn of the impending inclement weather, appellants have failed to demonstrate any breach of that duty. Absent a breach of duty, no negligence can be established; and therefore, Crestline was entitled to judgment as a matter of law. Sparks, 6th Dist. No. E-97-007, at * 7;Jeffers, 43 Ohio St.3d at 142; Menifee, 15 Ohio St.3d 75 at 77. Therefore, the trial court did not err in granting Crestline's motion for summary judgment as to this ground as well.
 IV. Conclusion {¶ 34} For all these reasons, we hold that the trial court did not err in granting summary judgment in favor of Crestline. Although we have relied upon additional grounds not relied upon by the trial court to find that summary judgment was appropriate, "[a] judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." Bonner v.Bonner, 3d Dist. No. 14-05-26, 2005-Ohio-6173, ¶ 18, citing Lust v.Lust, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶ 32, citing Smith v.Flesher (1967), 12 Ohio St.2d 107, 110, 233 N.E.2d 137. *Page 19 
 {¶ 35} Appellants' assignment of error is, therefore, overruled.
 {¶ 36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J. and WILLAMOWSKI, J., concur.
[1] Appellants Adkins et al. have since settled their claims against defendants Spectra and Delta.
[2] We also note the record reflects that, in addition to the city's warnings of inclement weather, Spectra issued a warning as well. (Hoerig Depo. at 128); (Pichot Depo. at 34); (Aman Depo. at 93). *Page 1