[Cite as *Iannuzzi v. Harris*, 2011-Ohio-3185.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CELESTE S. IANNUZZI, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-117 |
| | ) | |
| ERIC W. HARRIS, ET AL., | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 09CV2508

JUDGMENT:     Affirmed in part
Reversed in part

APPEARANCES:
For Plaintiff-Appellee     Attorney Ilan Wexler
Attorney Robert D. Vizmeg
Attorney Raymond J. Tisone
21 N. Wickliffe Circle
Youngstown, Ohio 44515

For Defendants-Appellants     Attorney Neil D. Schor
26 Market Street, Suite 1200
P.O. Box 6077
Youngstown, Ohio 44501-6077

Paul Gains
Prosecutor
Attorney Gina DeGenova Bricker
Assistant Prosecuting Attorney
21 W. Boardman Street, 6th Floor
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 17, 2011

DONOFRIO, J.

{¶1} Defendants-appellants, Eric Harris and the Mahoning County Sheriff Randall Wellington, appeal from a Mahoning County Common Pleas Court judgment denying their motion for summary judgment on a negligence claim filed by plaintiff-appellee, Celeste Iannuzzi.

{¶2} On July 13, 2007 at approximately 9:00 p.m., appellant Sheriff's Deputy Eric Harris was working traffic patrol in Canfield Township on Route 224. Deputy Harris was sitting in his patrol car in the Westford Place office complex monitoring traffic speed with his radar. According to Deputy Harris, he clocked a vehicle travelling eastbound at 59 miles per hour in a 45-mile-per-hour zone. Consequently, Deputy Harris activated his lights and began to pull out onto 224. As he pulled out into traffic, a vehicle driven by appellee collided with Deputy Harris's patrol car in the second eastbound lane (closest to the middle lane of the five lane road).

{¶3} On July 2, 2009, appellee filed a complaint against appellants raising a negligence claim for injuries she sustained arising out of the traffic collision. Appellants filed an answer asserting the defense of sovereign immunity, among other defenses.

{¶4} Appellants then filed a motion for summary judgment asserting that they were immune from liability under R.C. Chapter 2744. and no genuine issues of material fact existed. The trial court denied this motion finding that genuine issues of material fact did exist. Appellants filed a timely notice of appeal on July 16, 2010.

{¶5} Initially, it should be noted that while generally the denial of a summary judgment motion is not a final, appealable order, in this case it is. Here appellants' motion for summary judgment was based on the premise of governmental immunity. The Ohio Supreme Court has held: "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, at the syllabus.

{¶6} Appellants raise two assignments of error that both allege the denial of

summary judgment was improper. Therefore, the same standard of review applies to both alleged errors.

{¶7} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming* (1994), 68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247-48.

{¶8} Additionally, the law on political subdivision immunity applies to both assignments of error.

{¶9} Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process. *Green Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556. Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. Id. at 556-57. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. Id. at 557. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability. Id.

{¶10} Thus, in this case, we must begin our analysis under the first tier with the premise that appellants are not liable in damages here.

{¶11} Next, under the second tier, the possible exception to immunity in this case is set out in R.C. 2744.02(B)(1), which provides:

{¶12} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to

person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

**{¶13}** "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."

**{¶14}** It is with these premises in mind that we move on to appellants' assignments of error.

**{¶15}** Appellants' first assignment of error states:

**{¶16}** "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANT MAHONING COUNTY SHERIFF RANDALL WELLINGTON PURSUANT TO OHIO REVISED CODE §2744.02(B)(1)(a) AS SHERIFF WELLINGTON IS IMMUNE FROM LIABILITY BECAUSE APPELLANT DEPUTY ERIC W. HARRIS WAS OPERATING HIS POLICE VEHICLE IN RESPONSE TO AN EMERGENCY CALL."

**{¶17}** Appellants argue here that pursuant to R.C. 2744.02(B)(1)(a), Sheriff Wellington is immune from liability.

**{¶18}** R.C. 2744.02(B)(1)(a) provides that it is a full defense to liability under R.C. 2744.02(B)(1) when: "A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."

**{¶19}** "'Emergency call' means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A).

**{¶20}** Appellants argue that because Deputy Harris was responding to a "call to duty" when he went in pursuit of a speeding vehicle, immunity applies under R.C.

2744.02(B)(1)(a).

**{¶21}** In raising their call to duty argument, appellants rely on *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319. In *Colbert*, the Ohio Supreme Court rejected the notion that only those calls to duty that concern inherently dangerous situations qualify as emergency calls. Id. at ¶11. Instead, it held "a call to duty involves a situation to which a response by a peace officer is required by the officer's professional obligation." Id. at ¶13.

**{¶22}** In the present case, appellants assert that Deputy Harris was responding, as part of a call to duty, to his observation of a speeding vehicle violating a traffic law in an area that was given special treatment for radar detection and speeding enforcement by the Sheriff based on the area's history of accidents and fatalities. Additionally, they point out that Deputy Harris considered the situation of apprehending the speeding vehicle to be inherently dangerous. And they claim that Deputy Harris activated his overhead lights and sirens before engaging in his pursuit on Route 224.

**{¶23}** Appellee seems to concede in her brief that if there in fact was a speeding car, Deputy Harris may have been responding to a call to duty. However, she claims she raised a genuine issue of material fact as to whether there was a speeding car to begin with.[1]

**{¶24}** Two witnesses offered evidence as to whether there was a speeding vehicle of which Deputy Harris was in pursuit, Deputy Harris and Richard Eckmon.

**{¶25}** In his deposition, Deputy Harris stated that just prior to the accident he was in a parking lot at Route 224 and Westford Place conducting stationary patrol and running radar. (Harris dep. 10). He stated that with his radar he determined that a vehicle travelling eastbound on Route 224 was speeding. (Harris dep. 10, 15). In response, Deputy Harris stated that he exited the parking lot to follow the speeding

---

1 We should note that in their response brief, appellants argue that appellee never raised this argument in the trial court. However, appellants are mistaken. While appellee did spend quite a bit of her response to summary judgment on other arguments, she also argued that she "presented evidence that could lead a reasonable mind to believe that Deputy Harris was not attempting to pursue a speeding vehicle eastbound on Route 224" and cited to Richard Eckmon's affidavit.

vehicle. (Harris dep. 15, 16). Deputy Harris stated that instead of pulling out of the right lane of a parking lot that was for cars to exit and head eastbound on Route 224, he exited out of the straight lane, which was designed for entrance into the parking lot. (Harris dep. 15-16). And when asked why he did not turn into the curb lane heading eastbound and instead attempted to turn into the inside eastbound lane, Deputy Harris stated that he wanted to make sure all the traffic was stopped. (Harris dep. 17). Deputy Harris stated that he activated his lights and siren. (Harris dep. 16). He stated that as he attempted to enter the inside eastbound lane, the collision occurred. (Harris dep. 23).

{¶26} Eckmon witnessed the traffic accident in question. He averred that he was driving eastbound on Route 224 in the outside lane while a woman was driving next to him in the inside lane also heading east. (Eckmon Aff.) Eckmon did not recall any other cars ahead of them. (Eckmon Aff.) Nor did he recall that anyone had passed them or was travelling faster than them between Raccoon Road and Westford Place. (Eckmon Aff.) Eckmon noticed a police car approach Route 224 from Westford Place. (Eckmon Aff.) He saw that the police car was not going to stop and, therefore, applied his brakes very hard to avoid a collision. (Eckmon Aff.) Eckmon stated that while he noticed the officer's lights turn on just as the officer reached Route 224, at no time did he hear a siren. (Eckmon Aff.) Eckmon then witnessed the accident. (Eckmon Aff.) He stated that he remembered having seen a couple of police cars parked along the south side of Route 224 near Sheetz, Bob Evans, or Ruby Tuesday's. (Eckmon Aff.) This caused Eckmon to believe that the officer involved in the accident may have been turning around to meet with the other officers "*as he was turning their way* [which was westbound]." (Emphasis added; Eckmon Aff.)

{¶27} Viewing the evidence in the light most favorable to appellee, as we are required to do, raises a genuine issue of material fact as to whether Deputy Harris was actually in pursuit of a speeding vehicle when appellee's vehicle collided with his cruiser. Eckmon's statements call into question whether Deputy Harris was pursuing

a speeding car travelling eastbound on Route 224. Contrary to what Deputy Harris stated, Eckmon indicated that Deputy Harris appeared to be turning westbound, not eastbound. Furthermore, Eckmon did not recall seeing another vehicle travelling in front of him that could have been speeding. Additionally, Deputy Harris's statements that he did not exit the parking lot from the lane that would have directed him eastbound on Route 224 and that he decided not to simply turn into the curbside, eastbound lane lend credence to Eckmon's statements.

**{¶28}** As such, Sheriff Wellington is not entitled to summary judgment on the basis of R.C. 2744.02(B)(1)(a) because there is a genuine issue of material fact as to whether Deputy Harris was responding to a call to duty. Accordingly, appellants' first assignment of error is without merit.

**{¶29}** Appellants' second assignment of error states:

**{¶30}** "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANTS MAHONING COUNTY SHERIFF RANDALL WELLINGTON AND DEPUTY ERIC W. HARRIS AS APPELLANTS ARE IMMUNE FROM LIABILITY PURSUANT TO ORC §§ 2744.02(B)(1)(a) AND 2744.03(A)(6)(b), BECAUSE DEPUTY HARRIS DID NOT ACT IN A WILLFUL, WANTON OR RECKLESS MANNER OR WITH MALICIOUS PURPOSE OR IN BAD FAITH IN THE OPERATION OF HIS POLICE VEHICLE."

**{¶31}** Here appellants assert that pursuant to R.C. 2744.02(B)(1)(a) Sheriff Wellington is immune from liability and pursuant to R.C. 2744.03(A)(6) Deputy Harris is immune from liability. They base their assertions on the argument that Deputy Harris's conduct was within the scope of his employment and was not willful, reckless, or in bad faith.

**{¶32}** Appellants argue that appellee never asserted in her complaint or amended complaint that Deputy Harris acted outside the scope of his employment, with malicious purpose, in bad faith, or in a wanton or reckless manner. Instead, they contend, appellee merely stated a claim for negligence.

**{¶33}** Appellants assert that Sheriff Wellington is entitled to immunity under

R.C. 2744.02(B)(1)(a). It is only a full defense to liability for the political subdivision under R.C. 2744.02(B)(1)(a) when: "A member of a municipal corporation police department or any other police agency was [1] operating a motor vehicle while responding to an emergency call *and* [2] the operation of the vehicle did not constitute willful or wanton misconduct." (Emphasis added.) As discussed in appellants' first assignment of error, a genuine issue of material fact exists as to whether Deputy Harris was responding to a call to duty (emergency call) because a question exists as to whether he was in fact pursuing a speeding vehicle. Thus, whether Deputy Harris's operation of his vehicle constituted willful or wanton misconduct is not determinative of whether Sheriff Wellington is entitled to immunity under R.C. 2744.02(B)(1) since both conditions set out in that section must apply.

{¶34} As to Deputy Harris, however, immunity applies under R.C. 2744.03(A)(6).

{¶35} R.C. 2744.03(A)(6) provides:

{¶36} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶37} "* * *

{¶38} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section * * * the employee is immune from liability unless one of the following applies:

{¶39} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

{¶40} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

{¶41} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *."

{¶42} As appellants point out, appellee did not assert in either her complaint or her first amended complaint that Deputy Harris acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Nor did she allege that he was acting outside of the scope of his employment. She merely asserted that Deputy Harris, while in the scope of his employment, acted negligently.

{¶43} In *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 316, 2007-Ohio-2070, the appellate court reversed the trial court's grant of summary judgment to the school on its claimed immunity. In part, the appellate court concluded that genuine issues of material fact existed regarding whether the coach in question acted with a malicious purpose, in bad faith, or in a wanton and reckless manner despite the fact that the plaintiff had not included any such allegations of malice, bad faith, or reckless conduct in his amended complaint. The Ohio Supreme Court reversed the appellate court's decision, in part reasoning:

{¶44} "[B]ecause the amended complaint failed to allege malice, bad faith, or wanton or reckless conduct, the appellate court strayed well beyond the pleadings and erred in reversing the judgment of the trial court in that regard, and we need not further address that issue." Id. at ¶31.

{¶45} Following *Elston*, other courts have also found that a party's complaint against a political subdivision must specifically allege malice, bad faith, or wanton or reckless conduct in order to argue these issues on summary judgment. See *Smith v. Martin*, 176 Ohio App.3d 567, 2008-Ohio-2978, at ¶¶32-33; *Ohio Bell Tel. Co. v. Digioia-Suburban Excavating , L.L.C.*, 8th Dist. Nos. 89708,89907, 2008-Ohio-1409, at ¶¶39-40.

{¶46} Thus, because appellee failed to assert in her complaint or first amended complaint that Deputy Harris acted with malice, bad faith, or wanton or reckless conduct, she may not now rely on such allegations to defeat Deputy Harris's personal immunity under R.C. 2744.03(A)(6).

{¶47} Consequently, Deputy Harris is entitled to immunity under R.C. 2744.03(A)(6) and the trial court erred in failing to grant summary judgment in his

favor.

**{¶48}** Accordingly, appellants' second assignment of error has merit as it applies to Deputy Harris but it does not have merit as it applies to Sheriff Wellington.

**{¶49}** For the reasons stated above, the trial court's judgment is hereby reversed in part and summary judgment is entered in favor of Deputy Harris. The trial court's judgment is affirmed as it applies to Sheriff Wellington.

Vukovich, J. concurs.

DeGenaro, J. concurs.