**RAILROAD VENTURES, INC., Appellant,**

v.

**DRAKE et al., Appellees.**

[Cite as *Railroad Ventures, Inc. v. Drake* (2000), 138 Ohio App.3d 315.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 99–CO–10.

Decided June 27, 2000.

---

6. *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975.

7. R.C. 2901.22(C).

8. See, *e.g., State v. Martin* (1999), 134 Ohio App.3d 41, 730 N.E.2d 386.

*Stuart A. Strasfeld* and *David S. Barbee,* for appellant.

*John D. Latchney,* for appellees.

Cox, Presiding Judge.

This matter presents a timely appeal from a judgment rendered by the Columbiana County Common Pleas Court, granting the motion for summary judgment of defendants-appellees, Tracy V. Drake et al., thereby dismissing the cause of action of plaintiff-appellant, Railroad Ventures, Inc.

On or about November 8, 1996, appellant purchased approximately 304 acres of land for $730,000. The land included 36.7 miles of the Youngstown & Southern Railroad and 2.6 miles of the former Pittsburgh and Lake Erie Railroad (collectively referred to as "the railroad"). Instead of continuing the operations of the railroad, appellant considered abandoning the railroad and selling the steel as scrap metal, as the steel was allegedly worth $1,400,000.

The Columbiana County Port Authority ("CCPA"), learned of appellant's intentions to abandon the railroad and Drake, the executive director of the CCPA, offered to purchase the railroad and adjacent property for $1,100,000.00. Appellant rejected this offer. Drake and the CCPA then joined efforts with the Ohio Rail Development Commission ("ORDC"), and attempted to prevent the abandonment of the railroad by filing a petition with the Surface Transportation Board ("STB") to reject, revoke, or stay the notice of exemption. Drake, the CCPA, and the ORDC also filed a petition for declaratory order in opposition to appellant's acquisition of the railroad property. In essence, Drake, the CCPA and the ORDC sought an order from the STB declaring appellant's ownership of the railroad void so that the property would revert to the seller.

Appellant thereafter filed suit against Drake, the CCPA, the ORDC, and Lou Jannazo, who was the chief planner of the ORDC, in the Mahoning County Common Pleas Court. Appellant subsequently dismissed Jannazo and the ORDC, leaving only Drake and the CCPA (hereinafter referred to collectively as "appellees") as defendants to this action. Appellant's claims against appellees

included tortious interference with business relations and slander of title. On September 17, 1997, appellees filed a motion to transfer the case to the Columbiana County Common Pleas Court, due to improper venue. On November 18, 1997, the Mahoning County Common Pleas Court granted the motion to transfer, thereby transferring the matter to the Columbiana County Common Pleas Court.

Upon completion of discovery, appellees filed a motion for summary judgment. The trial court granted same on January 6, 1999, holding that appellees were protected from liability under governmental immunity. This appeal followed.

Appellant sets forth three assignments of error on appeal.

Since appellant's first and second assignments of error have a common basis in law and fact, they will be discussed together and respectfully allege:

"The court erred as a matter of law when it held that no genuine issues of material fact existed as to whether the actions of Drake and the CCPA were performed 'with malicious purpose, in bad faith, or in a wanton or reckless manner.'

"The court erred as a matter of law when it held that no genuine issues of material fact existed as to whether Drake acted 'manifestly outside the scope of his employment.' "

Summary judgment is governed by Civ.R. 56(C), and in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132, the Ohio Supreme Court discussed the standard for granting summary judgment, stating:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' * * * Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."

Additionally, the Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support its claims. The Ohio Supreme Court in *Dresher* further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which that party bears the burden of production at trial. In reviewing a trial court's decision to grant summary judgment, a court of appeals

must conduct a *de novo* review of the record. *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 676 N.E.2d 151.

■ In *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614–615, the Ohio Supreme Court established a three-tiered analysis for determining whether a political subdivision is immune from liability. Under the first tier, R.C. 2744.02(A) provides the general rule that political subdivisions are not liable for injuries or damages. If immunity is established under R.C. 2744.02(A), such immunity is not absolute. Under the second tier of the analysis, one of five exceptions of R.C. 2744.02(B) may take away the immunity. However, this lack of immunity does not automatically subject the governmental subdivision to liability. Under the third tier of the analysis, immunity may be reinstated if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03.

Before discussing appellant's arguments, it is noted that appellant does not follow the three-tiered analysis of *Cater.* Appellant instead bypasses the first two tiers and immediately argues that certain defenses of R.C. 2744.03(A) do not apply. Appellant refers to these defenses as "exceptions," and attempts to establish appellees' liability by arguing that certain defenses of R.C. 2744.03(A) do not apply. However, the Ohio Supreme Court, in *Cater,* stated that R.C. 2744.03(A) provides defenses to liability, which cannot be used to establish liability. Instead, the Ohio Supreme Court stated that a party may only argue that a political subdivision is not entitled to one of the defenses. *Cater, supra.*

In order for the trial court to have correctly granted summary judgment in favor of appellees based upon governmental immunity, it must first be determined whether appellees had general immunity under R.C. 2744.02(A). R.C. 2744.02(A) provides:

"(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, *a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.*" (Emphasis added.)

■ Thus, before appellees could be entitled to the general veil of immunity under R.C. 2744.02(A), it must be determined whether the CCPA was a "political subdivision." R.C. 2744.01(F) defines a "political subdivision," stating:

"(F) 'Political subdivision' or 'subdivision' means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state.

'Political subdivision' includes, but is not limited to, * * * [a] *port authority* created pursuant to section 4582.02 or 4582.26 of the Revised Code or in existence on December 16, 1964 * * *." (Emphasis added.)

Since the CCPA was a port authority, it was a "political subdivision" under R.C. 2744.01(F) and entitled to the immunity provided under R.C. 2744.02(A). Therefore, the first tier was satisfied, and appellees were protected under the general veil of immunity. *Cater, supra.*

■ Next, under the second tier of the analysis, it must be determined whether one of the exceptions of R.C. 2744.02(B) applied, thereby usurping the veil of governmental immunity. *Cater, supra.* Appellees argue that none of the exceptions of R.C. 2744.02(B) applies. Appellees cite *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107, wherein the Ohio Supreme Court stated:

"R.C. 2744.02(B) provides five exceptions to the immunity created in R.C. 2744.02(A)(1) for political subdivisions. One of the exceptions, R.C. 2744.02(B)(2), establishes liability of political subdivisions for injuries caused by negligent acts performed by employees with respect to proprietary functions. There is, however, no such general exception for governmental functions. Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. * * *. There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case ."

Appellees also cite *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807, wherein the court held that a political subdivision could not be held liable for tortious interference with contract or for making untrue statements regarding property. In the present matter, appellees argue that appellant's claims included tortious interference with business relations and slander of title. Appellees contend that these are intentional torts, which were not specifically exempted from governmental immunity. Therefore, appellees contend that it was not exempted from governmental immunity under 2744.02(B). *Wilson, supra; Farra, supra.*

Although R.C. 2744.02(B) does not include a specific exemption for tortious interference with contract or slander of title, appellees actions were proprietary in nature and specifically exempted from governmental immunity under R.C. 2744.02(B)(2), which states:

"(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person

or property caused by the negligent performance of acts by their employees with respect to *proprietary functions* of the political subdivisions." (Emphasis added.)

"Proprietary functions" are defined under 2744.01(G), which states:

"(G)(1) 'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section * * *

" * * *

"(2) a 'proprietary function' includes, but is not limited to, the following:

" * * *

"(c) The establishment, *maintenance,* and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, *a railroad,* a busline or other transit company, an airport, and a municipal corporation water supply system." (Emphasis added.)

In the case at bar, appellees attempted to prevent the abandonment of the railroad. In so doing, appellees conferred with local businesses and also offered to purchase the railroad from appellant. Appellees further attempted to challenge appellant legally by filing certain actions with the STB. All of these actions are in furtherance of maintaining the railroad, which is specifically listed as a proprietary function under R.C. 2744.01(G). Appellees' reliance upon *Wilson supra* and *Farra* is misplaced as those cases involved governmental functions and the present matter involved a proprietary function. Therefore, appellees lost their veil of governmental immunity pursuant to R.C. 2744.02(B)(2).

While appellees appear to have lost their governmental immunity, they nonetheless had an opportunity to regain this immunity. Proceeding to the third tier of the analysis, it must be determined whether appellees are entitled to use one of the defenses set forth in R.C. 2744.03(A). *Cater, supra.* The trial court found that appellees were entitled to the defenses in R.C. 2744.03(A)(3), (5), and (6).

 Appellant first argues that the determination of whether a political subdivision is immune is a question which should be answered by the trier of fact, and is not appropriate for summary judgment. However, this assertion is invalid. This court in *Abdalla v. Olexia* (Oct. 6, 1999), Jefferson App. No. 97–JE–43, unreported, 1999 WL 803592, held that the question of whether a political subdivision is immune is purely a question of law and best determined on a motion for summary judgment.

Appellant next provides numerous instances of alleged misconduct, including alleged lies, inaccurate statements to the media, statements made inferring that appellant did not own the railroad, and a rallying of interested people in an attempt to prevent appellant from abandoning the railroad. Appellant maintains that this alleged misconduct established genuine issues of material fact regarding

whether appellees operated with a malicious purpose, in bad faith, or in a wanton or reckless manner, thereby precluding them from the defenses set forth in R.C. 2744.03(A)(5) and (6). Appellant also contends that Drake acted outside of the scope of his employment and authority, thereby precluding him from a defense. Therefore, appellant contends that the trial court erred in granting summary judgment because the trier of fact should have determined whether appellees were entitled to governmental immunity.

 Although appellant argues that appellees acted with malicious purpose, in bad faith, and in a wanton or reckless manner, these actions do not prevent the CCPA from using the defense of R.C. 2744.03(A)(3), which states:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

The trial court indicated that this was a possible defense available to the CCPA in reinstating governmental immunity. R.C. 4582.01(F)(1) defines "authorized purposes" of a port authority to include activities which increase, foster, aid, or promote economic development within the jurisdiction of the port authority. R.C. 4582.06(N) gives a port authority the power to do all acts necessary to carry out its authorized purposes. The railroad promoted economic development because it provided a means for local businesses to ship their products, and could potentially be used to attract more businesses to the area. Thus, the CCPA had the power to do all acts to prevent the abandonment of the railroad under R.C. 4582.02(N), and such acts were a policy-making decision. Therefore, the defense of R.C. 2744.03(A)(3) was available to the CCPA, thereby reinstating the veil of governmental immunity to the CCPA.

 While a finding of a malicious purpose, bad faith, or wanton or reckless conduct did not have a bearing in applying R.C. 2744.03(A)(3) to the CCPA, such findings could have prevented Drake, as an employee of the CCPA, from using the defense of R.C. 2744.03(A)(6), which states:

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

As stated in R.C. 2744.03(A)(6), Drake could have been precluded from using the governmental immunity defense if he acted outside the scope of his employment or official responsibilities. Although appellant argues that Drake acted outside the scope of his employment or responsibilities, this finding is not supported in the record. Appellees provided an affidavit from Russell Albright, the chairman of the board of the CCPA, which stated that Drake was authorized to take actions to preserve the railroad. This demonstrates that Drake's actions were not conducted outside the scope of his authority. Furthermore, as stated above, preserving of the railroad was an effort to aid the local businesses and potentially attract new businesses. Thus, Drake's decision to contest the abandonment of the railroad was not done with a malicious purpose, in bad faith, or in a wanton or reckless manner. Moreover, Drake's statements to the media were authorized under R.C. 4582.06(L). Therefore, Drake was entitled to the defense of R.C. 2744.03(A)(6) and thereby was not subject to liability.

It is noted that appellees argue that they were further entitled to summary judgment based upon the merits of the tortious interference-of-business-relations claim and the slander-of-title claim. However, given the fact that the trial court correctly found that appellees were entitled to governmental immunity, appellees' arguments on the merits are moot. Therefore, the trial court did not err in granting appellees' motion for summary judgment.

Appellant's first and second assignments or error are found to be without merit.

■ Appellant's third assignment of error on appeal alleges:

"The Mahoning County Court of Common Pleas erred as a matter of law when it transferred venue to Columbiana County."

Civ.R. 3(B) governs the determination of whether a court has proper venue to hear a case, and provides:

"Any action may be venued, commenced, and decided in any court in any county. When applied to county and municipal courts, 'county,' as used in this rule, shall be construed, where appropriate, as the territorial limits of those courts. Proper venue lies in any one or more of the following counties:

"(1) The county in which the defendant resides;

"(2) The county in which the defendant has his or her principal place of business;

"(3) A county in which the defendant conducted activity that gave rise to the claim for relief;

"(4) A county in which a public officer maintains his or her principal office if suit is brought against the officer in the officer's official capacity;

"(5) A county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property;

"(6) The county in which all or part of the claim for relief arose * * *."

Civ.R. 3(C) allows a trial court to transfer a case to another county if the case is not commenced in a county with proper venue. A trial court's decision to change venue is reviewed on an abuse of discretion basis. *McCoy v. Lawther* (1985), 17 Ohio St.3d 37, 38, 17 OBR 30, 31–32, 476 N.E.2d 1048, 1049. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell–Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880–881

Appellant argues that the trial court erred in transferring venue as venue was proper in Mahoning County under Civ.R. 3(B)(3), (5), or (6). Appellant argues that the railroad was located partially in Mahoning County and that the railroad was the subject of the litigation, thereby satisfying Civ.R. 3(B)(5). Appellant also argues that Drake met with appellant's representatives on at least one occasion in Mahoning County. Appellant argues that many of the businesses which were contacted to support appellees' endeavor to stop the abandonment of the railroad were located in Mahoning County. Furthermore, appellant contends that Drake's comments concerning the matter were to the Vindicator, a newspaper located in Mahoning County. Appellant argues that these facts satisfy either Civ.R. 3(B)(3) or (6). Therefore, appellant alleges that the trial court erred in transferring venue to Mahoning County.

In the present matter, the subject of the cause of action was not the property, as required by Civ.R. 3(B)(5), but instead was appellees' alleged tortious actions. Furthermore, a single meeting in Mahoning County did not provide proper venue in Mahoning County under Civ.R. 3(B)(3) or (6). There were several facts demonstrating that the proper venue for this case was in Columbiana County. First, Drake is a resident of Columbiana County, satisfying Civ.R. 3(B)(1). Second, the CCPA's principal place of business was in Columbiana County, satisfying Civ.R. 3(B)(2). Third, Drake was being sued in his official capacity and his principal office is in Columbiana County, thereby satisfying Civ.R. 3(B)(4). In *McCoy*, the Ohio Supreme Court held that the trial court has sound discretion to determine which of the criteria for venue have priority over others. Given that the trial court was presented with several criteria establishing proper venue to lie in Columbiana County, the trial court could have found that these criteria had priority over appellant's competing criteria. The trial court's

attitude was not unreasonable, arbitrary, or unconscionable. *Tracy, supra.* Therefore, the trial court did not abuse its discretion in transferring venue of the present matter to Columbiana County.

Appellant's third assignment of error is found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

VUKOVICH and WAITE, JJ., concur.