SMITH et al., Appellees,

v.

MARTIN et al.; Central Ohio Transit Authority, Appellant.

[Cite as *Smith v. Martin,* 176 Ohio App.3d 567, 2008-Ohio-2978.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–792.

Decided June 19, 2008.

568

Stebelton, Aranda & Snider, John M. Snider, and Daniel J. Fruth, for appellees.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., and Michael S. Loughry, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, Central Ohio Transit Authority ("COTA"), appeals from the judgment of the Franklin County Court of Common Pleas denying its motion for summary judgment on the negligence and loss-of-consortium claims asserted by plaintiffs-appellees, Andrew H. Smith, Alexandra Smith, and Nicholas Smith (collectively, "appellees").

{¶ 2} This action arises out of a head-on automobile collision that occurred on June 18, 2005. Appellees allege that defendant, Shaun Martin, was driving north on Stelzer Road when he struck a concrete bus-stop pad located just off the east side of the roadway. The bus-stop pad, which was bordered on three sides by four-by-four timbers, was constructed and maintained by COTA. Appellees contend that Martin's impact with the bus-stop pad caused Martin's vehicle to travel left of center and strike the vehicle driven by appellee Andrew Smith.

{¶ 3} On September 28, 2005, Smith, on behalf of himself and his children, Alexandra and Nicholas, filed a complaint against Martin and his insurer, Allstate Insurance Company, in the Franklin County Court of Common Pleas. Appellees alleged claims of negligence and loss of consortium against Martin and defamation of credit against Allstate. On March 14, 2006, by agreement of the parties, appellees filed a first amended complaint, adding claims against new party defendants, COTA and American Honda Finance Corporation. With respect to COTA, appellees alleged that COTA's placement and maintenance of the bus-stop pad was negligent, constituted a hazard to drivers traveling along Stelzer Road, and was the proximate cause of the collision at issue here.

{¶ 4} COTA filed an answer to appellees' first amended complaint on April 14, 2006, raising the defense of political subdivision immunity pursuant to R.C. 2744.03. On February 2, 2007, COTA moved for summary judgment. In its motion for summary judgment, COTA preserved any argument contesting appellees' allegation of negligence while arguing that it was immune from liability for appellees' claims under the Ohio Political Subdivision Tort Liability Act. Alternatively, COTA argued that application of the public-duty doctrine established that COTA owed no duty to appellees under the circumstances of this case.

{¶ 5} In a decision and entry filed August 27, 2007, the trial court denied COTA's motion for summary judgment. The trial court determined that the exception to political subdivision immunity set forth in R.C. 2744.02(B)(2) exposed COTA to liability for the negligence alleged in appellees' complaint and that none of the defenses set forth in R.C. 2744.03 applied to restore COTA's immunity. COTA filed a timely notice of appeal from the trial court's denial of its motion for summary judgment.

{¶ 6} While a trial court's denial of a motion for summary judgment is normally not a final, appealable order, "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus. "A court of appeals must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ.R. 56(C) motion for summary judgment in which a political subdivision or its employee seeks immunity." Id. at ¶ 21. Accordingly, we possess jurisdiction to consider COTA's appeal.

{¶ 7} In its single assignment of error, COTA contends:

The Lower Court erred to the prejudice of [COTA] when it denied its motion [for] summary judgment on the basis of immunity under Ohio's Political Subdivision Tort Liability Act (Ohio Revised Code Chapter 2744).

{¶ 8} We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711, 622 N.E.2d 1153. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 10} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293, 662 N.E.2d 264. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 11} Whether a political subdivision is immune from liability is purely a question of law, properly determined prior to trial and preferably on a motion for summary judgment. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, quoting *Roe v. Hamilton Cty. Dept. of Human Serv.* (1988), 53 Ohio App.3d 120, 126, 560 N.E.2d 238. The process of determining whether a political subdivision is immune from liability involves a three-tiered analysis, the first tier of which is a general rule that a political subdivision is immune from liability

incurred in performing either governmental or proprietary functions. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). However, the immunity provided by R.C. 2744.02(A)(1) is not absolute, but is subject to various exceptions set forth in R.C. 2744.02(B).

{¶ 12} The second tier of the political-subdivision-immunity analysis requires a determination of whether any of the five exceptions to immunity enumerated in R.C. 2744.02(B) apply to expose the political subdivision to liability. The only R.C. 2744.02(B) exception arguably applicable here is set forth in R.C. 2744.02(B)(2) and provides that, subject to certain inapplicable exceptions, "political subdivisions *are* liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." (Emphasis added.)

{¶ 13} Finally, the third tier of analysis comes into play if one of the R.C. 2744.02(B) exceptions strips the political subdivision of the immunity provided by R.C. 2744.02(A)(1). Under the third tier, immunity may be reinstated if the political subdivision successfully asserts one of the defenses to liability listed in R.C. 2744.03. *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 12. Thus, the third tier requires the court to determine whether any of the R.C. 2744.03 defenses apply to provide the political subdivision a defense against liability. This case involves the potential application of two defenses, which provide as follows:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* * *

(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

* * *

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

R.C. 2744.03. Using this well-established framework, we now turn to COTA's specific claim of immunity.

{¶ 14} The parties do not dispute that COTA is a political subdivision, as defined in R.C. 2744.01(F). See R.C. 306.31 ("A regional transit authority [created in accordance with R.C. 306.32] is a political subdivision of the state"). Nor do the parties dispute that, absent application of the R.C. 2744.02(B)(2) exception, COTA is entitled to the general grant of immunity provided by R.C. 2744.02(A)(1). Accordingly, no further discussion of the first-tier analysis is warranted, and we begin our analysis with the second tier.

{¶ 15} Appellees argue that the R.C. 2744.02(B)(2) exception regarding negligence of a political subdivision's employee with respect to proprietary functions applies to strip COTA of its immunity. However, while appellees maintain that COTA's actions regarding the placement and maintenance of the bus stop pad were proprietary functions subject to the R.C. 2744.02(B)(2) exception, COTA maintains that its actions constituted governmental functions for which it is entitled to immunity. In denying COTA's motion for summary judgment, the trial court agreed with appellees and held that COTA's placement and maintenance of the bus stop pad constituted the exercise of proprietary functions, subject to the R.C. 2744.02(B)(2) exception, and that COTA could, therefore, be held liable for the negligence of its employees with respect to such functions.

{¶ 16} The parties' dispute regarding the second-tier analysis focuses on the threshold issue of whether COTA's actions constituted proprietary or governmental functions. The mutually exclusive definitions of "governmental function" and "proprietary function" are set forth in R.C. 2744.01. R.C. 2744.01(C) defines a "governmental function" as follows:

(1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

In contrast, R.C. 2744.01(G) defines "proprietary function" as follows:

(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

Among the proprietary functions described in R.C. 2744.01(G)(2) is "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, *a busline or other transit company,* an airport, and a municipal corporation water supply system." (Emphasis added.) R.C. 2744.01(G)(2)(c).

{¶ 17} The Supreme Court of Ohio has noted that, "[i]n making the distinction between governmental functions and proprietary functions a key component of R.C. Chapter 2744 * * *, the General Assembly has chosen to embrace a concept that was developed through the case law of this court prior to the adoption of that chapter." *Greene Cty. Agricultural Soc.,* 89 Ohio St.3d at 558, 733 N.E.2d 1141. The Supreme Court continued:

"In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, * * * the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to * * * immunity * * *. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens * * * and the city has an election whether to do or omit to do those acts, the function is private and proprietary.

"Another familiar test is whether the act is for the common good of all the people of the state, or whether it relates to special corporate benefit or profit."

Id., quoting *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 284–285, 156 N.E. 210. "When a political subdivision's acts go beyond governmental functions (and when it acts in a proprietary nature) there is little justification for affording immunity to that political subdivision." *Greene Cty. Agricultural Soc.,* 89 Ohio St.3d at 559, 733 N.E.2d 1141.

{¶ 18} Here, the trial court found that COTA's placement and maintenance of the bus-stop pad constituted a proprietary function under R.C. 2744.01(G)(2)(c), stating that the operation of a bus line or transit company necessarily includes the establishment and maintenance of bus stops and, in COTA's case, the placement and maintenance of bus-stop pads. We agree.

{¶ 19} In *RR. Ventures, Inc. v. Drake* (2000), 138 Ohio App.3d 315, 322, 741 N.E.2d 206, the Seventh District Court of Appeals addressed the R.C. 2744.01(G)(2)(c) proprietary functions with respect to a county port authority's actions and held that actions "in furtherance of maintaining [a] railroad, which is specifically listed as a proprietary function under R.C. 2744.01(G)," constituted proprietary functions. In that case, the Columbiana County Port Authority acted to prevent the plaintiff from abandoning a railroad on the plaintiff's property and selling the steel as scrap metal. The port authority offered to purchase the railroad from the plaintiff and challenged the plaintiff legally by filing actions with the Surface Transportation Board, after which the plaintiff sued the port authority for tortious interference with business relations and slander of title. The trial court granted summary judgment in favor of the port authority, and the court of appeals affirmed, holding that the port authority was protected from liability arising out of its proprietary functions by political subdivision immunity.

{¶ 20} The Supreme Court of Ohio specifically addressed the proprietary functions listed in R.C. 2744.01(G)(2)(c) in considering the application of the R.C. 2744.02(B)(2) exception to political subdivision immunity in *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109. In that case, the city of Urbana hired an excavating company to assist the city in improving its water distribution system. The appellant, a general laborer employed by the excavating company, was injured when the city turned on the water prior to completion of a valve installation, and the water pressure blew the valve off, striking appellant's head and shoulders. The Supreme Court held that the city was involved in a proprietary function at the time of the accident, namely the maintenance or operation of a municipal water supply system pursuant to R.C. 2744.01(G)(2)(c). The Supreme Court held, "The 'establishment, maintenance, and operation' of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a necessary part of the system and such activity is a proprietary function of a political subdivision." Id. at paragraph two of the syllabus.

{¶ 21} By analogy to *Hill*, we hold that the establishment, maintenance, and operation of a bus line encompasses the placement and maintenance of equipment, facilities, and materials that are a necessary part of the bus line. Stephen Douglas, COTA's Manager of Street and Remote Facilities, testified that concrete bus-stop pads are a necessary part of COTA's operation of its bus system. Like the trial court, we conclude that the establishment, placement, and maintenance of bus stops and bus-stop pads are a necessary part of maintaining and operating a bus line and, pursuant to R.C. 2744.01(G)(2)(c), constitute a proprietary function.

{¶ 22} Even were we to conclude that COTA's activity here does not fall squarely within R.C. 2744.01(G)(2)(c)'s classification of "[t]he establishment, maintenance, and operation of * * * a busline or other transit company" as a proprietary function, COTA's placement and maintenance of its bus stop pad does not fit within the definition of a governmental function. First, COTA's placement and maintenance of its bus stop pad does not fall within the categories of governmental functions described in R.C. 2744.01(C)(2). Although COTA argues that its activity falls within the conduct described in R.C. 2744.01(C)(2)(e), which classifies as a governmental function "the maintenance and repair" of "roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds," we disagree with COTA's contention that its conduct is more akin to the maintenance and repair of roads, sidewalks, and public grounds than to the operation of a bus line. While the bus stop pad was located adjacent to Stelzer Road, there is no evidence that COTA's actions involved the maintenance and repair of a road, sidewalk, or public ground.

{¶ 23} Second, COTA's placement and maintenance of its bus-stop pad does not satisfy the definitional criteria for a governmental function set forth in R.C. 2744.01(C)(1)(a) through (c). Unlike the governmental functions listed in R.C. 2744.01(C)(2), which include the provision of police, fire, and emergency medical services, a public education system, law enforcement, and regulation of traffic, the placement and maintenance of a bus-stop pad is neither a function imposed upon the state as an obligation of sovereignty nor a function for the common good of all citizens of the state, as required by R.C. 2744.01(C)(1)(a) and (b). Rather, such actions benefit COTA's patrons by providing them a place, safely off the road and out of the adjacent drainage ditch, to wait for or alight from a bus. Moreover, while placing and maintaining a bus-stop pad may promote or preserve public safety, it does not involve "activities that are not engaged in or not customarily engaged in by nongovernmental persons." See R.C. 2744.01(C)(1)(c). To the contrary, nothing about the placement and maintenance of a bus stop, or a bus line for that matter, is unique to governmental actors. Accordingly, we hold that COTA's activities here did not constitute governmental functions under R.C. 2744.01(C).

{¶ 24} Having determined that COTA's actions did not involve functions described in R.C. 2744.01(C)(1)(a) or (b) and involved activities that are customarily engaged in by nongovernmental persons, we hold that COTA's actions constitute proprietary functions under R.C. 2744.01(G). Therefore, the R.C. 2744.02(B)(2) exception to public subdivision immunity applies. Accordingly, we must determine whether any of the defenses to liability set forth in R.C. 2744.03 apply to restore COTA's immunity.

{¶ 25} COTA argues that both R.C. 2744.03(A)(3) and (A)(5) apply to reinstate its immunity from liability for appellees' claims. Because we find it determinative, we first consider application of R.C. 2744.03(A)(5), which provides as follows:

> The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

Under that section, "a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining how to use equipment or facilities unless that judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." *Elston* at ¶ 3. COTA argues that it is entitled to immunity, pursuant to R.C. 2744.03(A)(5), because the alleged conduct underlying appellees' claims concerns Douglas's exercise of judgment or discretion in determining how to use COTA equipment, supplies, materials, and resources.

{¶ 26} Douglas's internal client, the COTA office of Business Development/Planning, requested that his department install a bus-stop pad on the west side of Stelzer Road because there was no place for patrons to wait for the bus or to alight from the bus. While viewing the area as part of preparing to install a bus-stop pad on the west side of Stelzer Road, Douglas determined the additional need for a bus-stop pad on the east side of the road. He testified that "to leave that location and not look at doing something on the east side of the street; that would have been very uncomfortable for me because safety is something that we just don't compromise on." Although specifically requested to place a bus-stop pad on the west side of Stelzer Road, Douglas made the decision to install the bus-stop pad at issue, that is, the pad on the east side of Stelzer Road. In his affidavit, Douglas states, "I had discretion with regard to when, where and how to use COTA supplies, material and personnel in the design, construction and maintenance of the bus stop pad in question." Douglas had discretion over the design of the bus-stop pad, and it was his decision to install four-by-fours around the perimeter. Douglas stated, "For safety purposes, it is my policy to border the edges of the bus-stop pads with 4x4's in order to provide a boundary and prevent wheelchairs and other mobility assistance devices from going over the edge." Douglas also asserted, "The decision to install the bus stop pad in question, and how to install it, was fully within my policy-making, planning and enforcement powers by virtue of the duties and responsibilities of my position with COTA."

{¶ 27} COTA maintains that its design, installation, construction, and maintenance of the bus stop were the result of Douglas's exercise of judgment and discretion. In order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity, there must be " '[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved.' " *Bush v. Beggrow,* Franklin App. No. 03AP–1238, 2005-Ohio-2426, 2005 WL 1177935, ¶ 57, quoting *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60, 738 N.E.2d 37. Based on Douglas's testimony, we hold that COTA's design, installation, construction, and maintenance of the bus stop was the result of Douglas's exercise of judgment and discretion regarding the use of COTA equipment, supplies, materials, and resources. Douglas exercised his discretion to utilize COTA resources to design and install the bus-stop pad on the east side of Stelzer Road for the safety of COTA's patrons. Douglas's testimony regarding his decision to place the bus-stop pad on the east side of Stelzer Road and his decision to border the bus-stop pad with four-by-four timbers for patrons' safety evidences a " 'positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved.' " Id.

{¶ 28} Although the trial court found that the placement and maintenance of the bus-stop pad was the result of Douglas's exercise of discretion and judgment, it nevertheless found R.C. 2744.03(A)(5) inapplicable. The court found, as appellees argue on appeal, that R.C. 2744.03(A)(5) is inapplicable because the Franklin County Engineer's office had the ultimate authority as to whether to permit installation of the bus-stop pad. The Franklin County Engineer has charge of improvements, maintenance, and repair of all highways and bridges under the jurisdiction of the Board of County Commissioners. Cornell R. Robertson, the Highway Design Engineer for the Franklin County Engineer's office, stated that advance approval from the engineer's office is required for any work or construction within the reserved right-of-way of Stelzer Road, including the bus-stop pad at issue here. However, because Douglas mistakenly believed that the bus stop was located within the city of Columbus, COTA did not apply for or receive approval from the Franklin County Engineer's office to construct the bus-stop pad. Robertson states that had COTA applied for approval to construct the bus-stop pad as built, he would have recommended denial of COTA's application because he believed the four-by-four timbers bordering the bus-stop pad were too close to the paved portion of Stelzer Road.

{¶ 29} The evidence establishes that COTA's placement and maintenance of the bus-stop pad resulted from the exercise of discretion or judgment regarding how to use its equipment, personnel, and resources. The fact that the Franklin County Engineer had authority to deny COTA permission to locate its bus-stop

pad in the Stelzer Road right-of-way and that COTA mistakenly failed to apply for a permit from the Franklin County Engineer does not alter that conclusion.

{¶ 30} In finding that the discretion of the Franklin County Engineer's office to grant or deny a permit for construction trumped COTA's discretion, rendering R.C. 2744.03(A)(5) inapplicable, the trial court improperly added its own requirements to the statute. A court's duty is to construe statutes in a manner to give effect to the legislative intent. *Elston*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, at ¶ 25. In giving effect to the statutory language, a court may not delete words used or insert words not used. *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, ¶ 29. In *Elston*, the Supreme Court of Ohio considered the appellate court's holding that R.C. 2744.03(A)(5) extends immunity only to the acts of a political subdivision and not to the acts of its employees and reversed the appellate court's judgment. In doing so, the court stated, "The appellate court here has added its own phrases to this statute and unnecessarily manipulated and confused it." *Elston* at ¶ 26. Here, by rejecting application of the R.C. 2744.03(A)(5) defense based solely on the Franklin County Engineer's discretion to grant or deny a permit, the trial court has likewise added requirements to the statute not evident from the statutory language. COTA's actions involved the exercise of discretion or judgment in determining how to use its equipment, personnel, and materials, thus satisfying the requirements of R.C. 2744.03(A)(5), regardless of whether the Franklin County Engineer's office could have denied COTA a permit to construct the bus stop pad.

{¶ 31} Although we conclude that COTA's establishment and maintenance of the bus-stop pad resulted from Douglas's exercise of discretion or judgment in determining how to use equipment, personnel, and materials, R.C. 2744.03(A)(5) does not restore COTA's immunity if Douglas exercised such discretion or judgment with malicious purpose, in bad faith or in a wanton or reckless manner.

{¶ 32} In *Elston*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, at ¶ 31, the Supreme Court of Ohio held that in the absence of allegations in the complaint that the defendant acted with malice, bad faith or wanton or reckless conduct, the appellate court erred by straying beyond the pleadings and reversing the trial court's entry of summary judgment based on political subdivision immunity. In *Ohio Bell Tel. Co. v. Digioia–Suburban Excavating, L.L.C.*, Cuyahoga App. No. 89708, 2008-Ohio-1409, 2008 WL 802641, the Eighth District Court of Appeals likewise reversed the trial court's denial of summary judgment based on political subdivision immunity where the plaintiffs alleged only negligence and not that the city had acted with malicious purpose, in bad faith or in a wanton or reckless manner. See also *Knotts v. McElroy*, Cuyahoga App. No. 82682, 2003-Ohio-5937, 2003 WL 22510714 (upholding dismissal of plaintiff's

complaint on the basis of political subdivision immunity when plaintiff did not allege that the political subdivision acted with culpability greater than mere negligence).

{¶ 33} Here, in their first amended complaint, appellees alleged only that COTA had acted negligently in its placement and maintenance of the bus stop pad. Appellees did not allege that COTA exercised its judgment or discretion with malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, appellees' arguments regarding wanton or reckless conduct by COTA were insufficient to justify denial of COTA's motion for summary judgment.

{¶ 34} However, even were we to consider appellees' arguments that COTA acted in a wanton or reckless manner by failing to apply for and obtain approval from the Franklin County Engineer's office before constructing the bus-stop pad, we find that the trial court correctly concluded that the record contains no evidence of wanton or reckless conduct.[1] "[W]anton misconduct [is] the failure to exercise any care whatsoever." *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, citing *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. Reckless conduct occurs when an individual acts or intentionally fails to do an act that it is his duty to the other to do, knowing or having reason to know of facts that would lead a reasonable person to realize, not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such a risk is substantially greater than what is necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, quoting 2 Restatement of the Law 2d, Torts (1965), 587, Section 500.

{¶ 35} COTA admits that it did not apply for a permit from the Franklin County Engineer's office before constructing its bus-stop pad. However, Douglas believed that the location of the bus stop pad was within the city of Columbus and was covered by a general right-of-way permit from the city, eliminating the need for COTA to apply for an additional permit. Robertson admitted that there is a lot of confusion over who had jurisdiction over the area surrounding the bus-stop pad, noting that in 2002, the city of Columbus administered the design of a construction project on Stelzer Road and "reached Stage 2 or 3 level of design prior to the county engineer's office taking it over" because the location was not within the city of Columbus. At the time it constructed the bus-stop pad at issue, COTA was operating under the reasonable, albeit mistaken, belief that the bus-stop pad was located within the city of Columbus and not under the jurisdiction of

---

1. Appellees did not argue that COTA had acted with a malicious purpose or in bad faith.

the Franklin County Engineer's office. Based on that belief, COTA understood that it was not required to obtain a permit before constructing the bus-stop pad. Although Robertson testified that had COTA applied for a permit to construct the bus-stop pad as designed, he would have denied COTA's application, it is undisputed that Robertson does not possess the authority to grant or deny permits. Rather, only the Franklin County Engineer and the Chief Deputy Engineer in charge of engineering have authority to do so.

{¶ 36} The trial court concluded that the evidence before it was insufficient to present a jury question as to whether COTA exercised its discretion in a wanton or reckless manner. Finding no evidence in the record from which reasonable minds might conclude that COTA's exercise of its discretion in placing and maintaining the bus-stop pad constituted either wanton or reckless conduct, we agree with the trial court's conclusion and further hold that the exception to liability set forth in R.C. 2744.03(A)(5) applies to reinstate COTA's immunity.

{¶ 37} Because COTA is entitled to immunity under R.C. 2744.03(A)(5), we find COTA's arguments regarding its entitlement to immunity under R.C. 2744.03(A)(3) moot. Having held that COTA is entitled to immunity, pursuant to R.C. 2744.03(A)(5), we find that the trial court erred in denying COTA's motion for summary judgment. Accordingly, we sustain COTA's single assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and enter judgment in favor of COTA on appellees' claims.

Judgment reversed.

KLATT and SADLER, JJ., concur.