[Cite as *Needham v. Columbus*, 2014-Ohio-1457.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

John H. Needham,                          :

    Plaintiff-Appellant,          :           No. 13AP-270
                                                  (C.P.C. No. 11CVB04-4414)
v.                                        :

                                                  (REGULAR CALENDAR)
City of Columbus et al.,                  :

    Defendants-Appellees.         :

---

D E C I S I O N

Rendered on February 20, 2014

---

*Kevin O'Brien & Associates Co., L.P.A., Kevin O'Brien*, and *Jonathan Layman*, for appellant.

*Richard C. Pfeiffer, Jr.*, City Attorney, *Glenn B. Redick*, and *Janet R. Hill Arbogast*, for appellee City of Columbus.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} John H. Needham, plaintiff-appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for judgment on the pleadings filed by the City of Columbus ("the city"), defendant-appellee.

{¶ 2} On April 7, 2009, appellant was walking with friends on a sidewalk on the east side of North High Street, in the area of The Ohio State University campus in Columbus, Ohio, when he tripped on a metal mounting bracket installed on the sidewalk by the city. The bracket was approximately three inches tall and was used to secure one of numerous trash receptacles to the sidewalk. Appellant describes the trash receptacles as uniform, decorative, and excessively ornamental. At some point prior to the incident, the trash receptacle had become detached from the mounting bracket, leaving the mounting

bracket exposed. Appellant fell onto the sidewalk and sustained injuries as a result of his tripping on the bracket.

{¶ 3} On April 6, 2011, appellant filed a complaint against the city, alleging negligence in its design, installation, and maintenance of the trash receptacle. On October 17, 2011, the city filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), claiming it was entitled to governmental immunity for any negligence relating to the trash receptacle and mounting bracket. Appellant filed an amended complaint on April 2, 2012, adding the manufacturer of the trash receptacle, Victor Stanley, Inc., as a defendant.

{¶ 4} On March 4, 2013, the trial court granted the city's motion for judgment on the pleadings, finding the city was entitled to governmental immunity for its governmental functions involving the trash receptacle and mounting bracket. Appellant subsequently dismissed the manufacturer without prejudice. Appellant appeals the trial court's judgment, asserting the following assignment of error:

> THE COURT ERRED AS A MATTER OF LAW IN FINDING
> THAT THE CITY IS ENTITLED TO POLITICAL
> SUBDIVISION IMMUNITY.

{¶ 5} Appellant argues in his sole assignment of error that the common pleas court erred when it granted the city's motion for judgment on the pleadings. A Civ.R. 12(C) motion for judgment on the pleadings is specifically for resolving questions of law. *State ex rel. Montgomery v. Purchase Plus Buyer's Group, Inc.*, 10th Dist. No. 01AP-1073 (Apr. 25, 2002), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). In ruling on the motion, the trial court is permitted to consider both the complaint and answer, but must construe as true all the material allegations of the complaint, drawing all reasonable inferences in favor of the non-moving party. *Id.*; *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). In order to grant the motion, the court must find beyond doubt that the non-moving party can prove no set of facts that would entitle him or her to relief. *McCleland v. First Energy*, 9th Dist. No. 22582, 2005-Ohio-4940, ¶ 6. We review de novo the appropriateness of a decision granting judgment on the pleadings. *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000).

{¶ 6} R.C. Chapter 2744 addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions. To determine whether a political subdivision is entitled to immunity, a court must engage in a three-tiered analysis. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). In the first tier, a court applies the general grant of immunity contained in R.C. 2744.02(A)(1), which provides that " 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' " *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. This immunity, however, is not absolute, but is subject to the five exceptions to immunity listed in R.C. 2744.02(B)(1) through (5). *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557 (2000); *Cater* at 28. Thus, in the second tier of the immunity analysis, a court determines whether any of these five exceptions apply to the case at bar. *Id.* Finally, if the case falls into one of the exceptions, the court moves to the third tier of the analysis, where it must consider whether any of the defenses to liability contained in R.C. 2744.03 reinstates immunity. *Lambert* at ¶ 9; *Cater* at 28.

{¶ 7} In the present case, with regard to the first tier of the analysis, appellant does not dispute that the city is a political subdivision to which immunity applies pursuant to R.C. 2744.02(A)(1). With regard to the second tier of the analysis, appellant contends that the exception to immunity contained in R.C. 2744.02(B)(2) applies. R.C. 2744.02(B)(2) provides that a political subdivision is liable in damages in a civil action for injury to a person allegedly caused by an act or omission of the political subdivision in connection with a proprietary function if the injury is caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. Therefore, the issue in the present case is whether the city's actions relating to the trash receptacle was a governmental or proprietary function.

{¶ 8} R.C. 2744.01 sets forth mutually exclusive definitions of governmental and proprietary functions. *Smith v. Martin*, 176 Ohio App.3d 567, 2008-Ohio-2978, ¶ 16 (10th Dist.). R.C. 2744.01(C)(1) and (G)(1) set forth general definitions of governmental function and proprietary function respectively, whereas R.C. 2744.01(C)(2) and (G)(2)

respectively offer non-exhaustive examples of specific governmental and proprietary functions.

{¶ 9} R.C. 2744.01(C)(1) provides:

"Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

{¶ 10} R.C. 2744.01(C)(2) provides, in pertinent part:

A "governmental function" includes, but is not limited to, the following:

* * *

(e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds;

* * *

(k) The collection and disposal of solid wastes, as defined in section 3734.01 of the Revised Code, including, but not limited to, the operation of solid waste disposal facilities, as "facilities" is defined in that section, and the collection and management of hazardous waste generated by households. As used in division (C)(2)(k) of this section, "hazardous waste generated by households" means solid waste originally generated by individual households that is listed specifically as hazardous waste in or exhibits one or more characteristics of hazardous waste as defined by rules adopted under section

3734.12 of the Revised Code, but that is excluded from regulation as a hazardous waste by those rules.

{¶ 11} R.C. 2744.01(G)(1) provides:

"Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

{¶ 12} R.C. 2744.01(G)(2) provides:

A "proprietary function" includes, but is not limited to, the following:

(a) The operation of a hospital by one or more political subdivisions;

(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery;

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;

(d) The maintenance, destruction, operation, and upkeep of a sewer system;

(e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility.

{¶ 13} Here, the trial court found that the city's actions constituted "governmental functions." The court found that R.C. 2744.01(C)(2)(e) and (k) applied to the present case. With regard to R.C. 2744.01(C)(2)(e), the court concluded that, because the trash

receptacle and alleged exposed mounting bracket were located on a public sidewalk, the city was providing a "governmental function." With regard to R.C. 2744.01(C)(2)(k), the court concluded that the only reason the trash receptacle was placed on the public sidewalk was to collect trash, an activity that is specifically delineated in the revised code as a "governmental function," and the city's placement of the receptacle at issue is the first step in the collection and disposal of garbage.

{¶ 14} Appellant argues that the city's actions with respect to the trash receptacle were proprietary functions. Appellant asserts that providing ornamental, decorative trash receptacles is not imposed upon the state as an obligation of sovereignty, is not engaged in for the good of all of the citizens of the state, and is not the type of activity that is not customarily engaged in by non-governmental persons. Appellant points out that private businesses frequently place trash receptacles on the sidewalk, and the city chose to provide uniform, ornamental trash receptacles in order to beautify the area and encourage business.

{¶ 15} After considering both the complaint and answer, construing as true all the material allegations of appellant's complaint, and drawing all reasonable inferences in favor of appellant, we find beyond doubt that appellant can prove no set of facts that would demonstrate the city's actions were proprietary functions. Initially, we find the fact that the trash receptacles were uniform, ornamental or decorative is inconsequential to the analysis. We can find no authority, and appellant directs us to none, to support the proposition that the degree of ornateness would be a factor in determining whether a function is governmental or proprietary. We cannot find the ornamental nature of the trash receptacles somehow transformed the underlying function of the trash receptacle from governmental to proprietary. Furthermore, by hyper-focusing on the ornate nature of the receptacle, appellant unduly shifts the focus from the actual alleged cause of his fall; that is, the bracket that held down the trash receptacle. Therefore, we find the design of the receptacle itself is irrelevant to any alleged negligence in the placement and maintenance of the bracket.

{¶ 16} We concur with the trial court's analysis that the city was providing a "governmental function" because the trash receptacle and mounting bracket were located on a public sidewalk and the maintenance and repair of sidewalks is a governmental

function pursuant to R.C. 2744.01(C)(2)(e). The gist of appellant's argument, in this regard, is that the city should have maintained the sidewalk so as to repair the trash receptacle and bracket and/or remove the obstruction once the trash receptacle was no longer present. Specifically, in his complaint, appellant claims the city was responsible for maintenance of the bracket, should have remedied the tripping hazard, and owed a duty to maintain the bracket in a condition that did not pose an unreasonable risk of injury. Appellant's complaint clearly frames the city's function here as one of maintenance and repair of the sidewalk. Therefore, we find the city's actions relating to the bracket for the trash receptacle fell under the definition of maintenance and repair of a sidewalk and, thus, was a governmental function.

{¶ 17} *Evans v. Cincinnati*, 1st Dist. No. C-120726, 2013-Ohio-2063, involved analogous facts, and the court in that case reached the same conclusion as we have in the present case. In *Evans*, the plaintiff tripped and fell on a sidewalk while walking to a tailgate party before a Cincinnati Bengals football game. The plaintiff alleged that she tripped when her pant leg got caught on part of a broken metal pole for a signpost that was jutting out of the sidewalk. The plaintiff and her husband brought an action against the city of Cincinnati, alleging that the city was negligent in failing to maintain its premises in a safe condition. The city filed a motion for summary judgment, arguing that it was immune under R.C. 2744. The trial court denied the summary judgment motion, but the appellate court reversed the trial court's decision. On appeal, the plaintiff argued that the case was not about the maintenance of the sidewalk, but about the maintenance of the signpost. The plaintiff asserted that sign maintenance was a proprietary function because public signs are placed for the safety of others and because signs on streets, buildings, and billboards are customarily maintained by private persons. The court rejected plaintiff's argument, pointing out that R.C. 2744.01(G)(1)(a) explicitly provides that to be proprietary, an activity must not be listed as governmental, and sidewalk maintenance is specifically listed as governmental. The court found that the conduct about which plaintiff complained—that the city failed in its duty to keep the sidewalk clear of a dangerous obstruction—falls within the ambit of the city's responsibilities in connection with sidewalk repair under R.C. 2744.01(C)(2)(e). Therefore, the court in *Evans* concluded the conduct at issue was a "governmental function" for which immunity

is conferred upon the city and that immunity extended to a broken signpost within a sidewalk.

{¶ 18} Similar to *Evans*, in the present case, the conduct appellant complains about is the city leaving the mounting bracket exposed on the sidewalk after the trash receptacle had detached from it. Failing to remove a dangerous obstruction from the sidewalk implicates the city's maintenance and repair of the sidewalk, which is a governmental function under R.C. 2744.01(C)(2)(e).

{¶ 19} Additionally, appellant argues that *Greene Cty.* applies to the present case, and the trial court erred in rejecting it.  In *Greene Cty.*, a certain hog was given an award at a county fair. Subsequently, the president of the county agricultural society ("society") conducted in investigation into the hog and determined the hog was ineligible for the competition. The society filed an action seeking to enforce sanctions against the exhibitor of the hog. The exhibitor filed a counterclaim claiming the society had not followed its procedures in investigating and considering the matter. In relevant part, the trial court granted summary judgment on the basis that the society was a political subdivision that had engaged in a governmental function and was immune, pursuant to R.C. Chapter 2744, from all of the counterclaims.

{¶ 20} After the appellate court affirmed the trial court's judgment, the Supreme Court of Ohio reversed. In relevant part, the court first recognized that the key issue was not whether holding a county fair is a governmental function; rather, it was the more specific question of whether conducting the hog show at the county fair and conducting the investigation into the allegations of irregularity surrounding the entry of the hog in the show are governmental functions. The court explained that it was apparent that, even though conducting a county fair may be an activity not customarily engaged in by non-governmental persons, conducting a livestock competition is an activity customarily engaged in by non-governmental persons, as any organization, whether private or public, can hold a competition of this type. The court found that there was nothing inherently governmental about livestock competitions. The Supreme Court concluded that the society's activities did not constitute governmental functions but, instead, were proprietary functions.

{¶ 21} Applying *Greene Cty.* to the present case, appellant contends that although the maintenance of sidewalks is a governmental function, the more specific function of placing ornamental trash receptacles on a sidewalk is a proprietary function contained within a governmental function. However, we disagree that *Greene Cty.* controls this case. Appellant's argument relies upon the distinction that the trash receptacles were uniform, ornamental, and decorative, which we have already found are irrelevant factors to consider in the analysis of whether the function was governmental or proprietary. Furthermore, regardless of whether the mounting bracket was placed on the street to brace a decorative or non-decorative trash receptacle, the act of maintaining and repairing the sidewalk would still include the underlying governmental function of clearing the sidewalk of obstructions and removing any intrusive objects or devices that are broken or no longer serving their intended purpose. Additionally, unlike in *Greene Cty.*, it can be said here that the maintenance and repair of sidewalks along public streets are inherently governmental.

{¶ 22} For all of the above reasons, we find the city's actions in failing to remove the bracket from the sidewalk or replace the trash receptacle to eliminate the danger of anyone tripping over the exposed bracket were governmental functions. These actions were part of the city's governmental functions to maintain and repair sidewalks. Thus, the city was entitled to immunity in the present case. Having found the city was entitled to immunity based upon R.C. 2744.01(C)(2)(e), we need not address whether the city was also entitled to immunity under R.C. 2744.01(C)(2)(k) for the collection and disposal of solid wastes. Therefore, appellant's assignment of error is overruled.

{¶ 23} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, P.J., and TYACK, J., concur.

_____